UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMY LEIGH CAESAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 4:24-CV-00075-NCC |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Amy Leigh Caesar ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 8), Defendant has filed a brief in support of the Commissioner's decision (Doc. 9), and Plaintiff has filed a reply brief (Doc. 10). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 4).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on February 16, 2022 (Tr. 17, 251-77). Plaintiff was initially denied on April 12, 2022, and upon reconsideration on May 12, 2022 (Tr. 17, 61-77, 88-92). She filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 94-

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted, therefore, for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

95).  After a hearing, by decision dated February 10, 2023, the ALJ found Plaintiff not disabled (Tr. 14-30).  On November 14, 2023, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  The ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2021, and that Plaintiff has not engaged in substantial gainful activity since September 4, 2019, the alleged onset date (Tr. 19).  The ALJ found Plaintiff has the severe impairment of multiple sclerosis, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-21).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following nonexertional limitations: she cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; she cannot engage in balancing on narrow, slippery, or erratically moving surfaces; she can perform tasks requiring occasional operation of foot controls bilaterally and can engage in frequent handling and fingering; and she cannot work at unprotected heights or around moving mechanical parts or other such hazards (Tr. 21-24).  The ALJ found that Plaintiff is capable of performing past relevant work as an administrative clerk (Tr. 24).  Alternatively, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including routing clerk, office helper, and mail clerk (Tr. 25).  Thus, the ALJ concluded that Plaintiff has not been under a disability from September 4, 2019, through the date last insured, June 30, 2021 (Tr. 26).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

3

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the

4

evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

The Court accepts the facts as set forth in the parties' respective statements of fact and responses.  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.  In her appeal of the Commissioner's decision, Plaintiff argues, pursuant to *Pfitzner v. Apfel*, 169 F.3d 566 (8th Cir. 1999), that the ALJ failed to assess the RFC on a function-by-function basis (Doc. 8 at 2-4).  In the alternative, Plaintiff argues, pursuant to *Depover v. Barnhart*, 349 F.3d 563 (8th Cir. 2003), that the ALJ's silence implies an RFC with no limitations in standing, walking, lifting, carrying, pushing, or pulling (*id.* at 4-5).  Plaintiff further argues, pursuant to *Noerper v. Saul*, 964 F.3d 738 (8th Cir. 2020), that the ALJ impermissibly drew inferences from medical reports about Plaintiff's functional ability (*id.* at 5-7).  Plaintiff argues that the ALJ should have developed the record by ordering a consultative examination or a medical expert's review (*id.* at 7-8).  Plaintiff finally argues that the ALJ's error caused harm because, if Plaintiff had been limited to sedentary work, she would have been found disabled (*id.* at 9).  The Commissioner responds that an RFC that incorporates the regulatory definition of "light work" and adds additional limitations is not improper under *Pfitzner* or *Depover*, that additional development of the record would have been futile, and that the ALJ properly determined the RFC (Doc. 9).  The Court agrees with the Commissioner.

After careful consideration of the entire record, the ALJ determined that:

5

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with some additional limitations. Specifically, the claimant cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. The claimant cannot engage in balancing on narrow, slippery, or erratically moving surfaces. The claimant can perform tasks requiring occasional operation of foot controls bilaterally and she can engage in frequent handling and fingering. The claimant cannot work at unprotected heights or around moving mechanical parts or other such hazards.

(Tr. 21).

*Pfitzner v. Apfel*, 169 F.3d 566 (8th Cir. 1999) is inapposite. There, "the ALJ never specifically articulated Pfitzner's residual functional capacity, rather he described it only in general terms." 169 F.3d at 568. In the alternative, Plaintiff asserts that *Depover v. Barnhart*, 349 F.3d 563 (8th Cir. 2003) stands for the proposition that the ALJ in this case implied an RFC with *no* limitations in standing, walking, lifting, carrying, pushing, or pulling. That is incorrect. In *Depover*, the ALJ failed to make any findings as to sitting, standing, and walking. Here, the ALJ limited Plaintiff to "light work as defined in 20 CFR 404.1567(b)," incorporating by reference the following limitations: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983) (light work involves standing or walking for "approximately 6 hours of an 8-hour workday"). "Citing the regulatory requirements for light work reflects a function-by-function analysis because the findings address all functional areas." *Mink v. Berryhill*, No. 517CV06088DGKSSA, 2018 WL 3474087, at *2 (W.D. Mo. July 19, 2018); *see also Seavey v. Berryhill*, No. 2:16-CV-00063-SPM, 2018 WL 1317172, at *5 (E.D. Mo. Mar. 14, 2018) ("The most reasonable reading of the ALJ's decision is that he found Plaintiff capable of performing

6

the full range of light work, with the exception of the specific areas in which he found that Plaintiff had limitations.").

In addition, Plaintiff's argument that the ALJ impermissibly drew inferences from medical reports about Plaintiff's functional ability is unavailing. The cases cited by Plaintiff are distinguishable. In *Noerper v. Saul*, the ALJ favored the opinion of the plaintiff's primary care physician over the more detailed opinion of her orthopedist as to her left knee issues, and assessed that the plaintiff could stand or walk for 6 hours in an 8-hour workday. 964 F.3d at 745–46. Similarly, in *Eschenbrenner v. Kijakazi*, two state agency doctors both opined that the plaintiff was limited in her ability to "occasionally finger and feel," the ALJ found their opinions persuasive with the caveat that additional evidence showed the plaintiff was "more limited than assessed," and the ALJ nevertheless formulated an RFC that limited fingering to "frequent" and left the plaintiff's ability to "feel" unrestricted. No. 4:22 CV 1200 RLW, 2023 WL 8715767, at *6–8 (E.D. Mo. Dec. 18, 2023). In *Ackerman v. Kijakazi*, the sole RFC assessment in the record opined that the plaintiff was capable of performing work at the sedentary level, but the ALJ found, without explanation, that the plaintiff could engage in light work. No. 4:21-CV-814 PLC, 2023 WL 2496839, at *5–6 (E.D. Mo. Mar. 14, 2023). And, in *Martini v. Kijakazi*, the ALJ failed to properly evaluate the medical opinion evidence and failed to justify her conclusion that the plaintiff had the ability to perform light work beyond "her cursory reliance" on the State agency consultant's opinion. No. 4:20 CV 1711 CDP, 2022 WL 705528, at *6 (E.D. Mo. Mar. 9, 2022). All of the cases cited by Plaintiff involved issues with the ALJ's evaluation of medical opinion evidence, issues not present in this case. *See Noerper*, 964 F.3d at 745–46 (concluding that "the absence of evidence translating the medical evidence and subjective complaints into functional limitations, *coupled with the failure to address or resolve the differences between the*

*medical opinions of Drs. Wilkerson and Jones* leaves us unable to determine the permissibility of the Commissioner's RFC determination.") (emphasis added); *Martini*, 2022 WL 705528 at *6 (concluding that "[t]he absence of evidence translating the medical evidence and subjective complaints into functional limitations, *coupled with the ALJ's failure to properly evaluate the medical opinion evidence*, leaves me unable to determine whether the RFC assessment was supported by substantial evidence on the record as a whole") (emphasis added).

Moreover, insofar as Plaintiff argues that the ALJ should have developed the record by ordering a consultative examination or a medical expert's review, Plaintiff fails to explain how that further development would have assisted her case.  The ALJ obtained opinions from two State agency consultants, Dr. Dennis McGraw and Dr. Harry Cole, on April 11, 2022 and May 11, 2022, respectively, who both found "no functional information" prior to the date last insured and therefore "[i]nsufficient evidence to determine what limitations, if any, [Plaintiff] had during the relevant period" (Tr. 63, 69).  There is no indication that yet another medical review of Plaintiff's records from the relevant period would produce a different conclusion, and any further examination of Plaintiff would only speak to the current state of her impairment.  As noted by the Commissioner, the brevity of the record in this case is a function of the extent of Plaintiff's treatment during the relevant period.[2]

Thus, the only remaining issue is whether the RFC is supported by substantial evidence.  The Court finds that it is.  Around the time of the alleged onset of the disability, Plaintiff visited her regular doctor in August 2019 complaining of numbness/tingling in her right leg for about four months (Tr. 258).  That doctor noted some footdrop, ordered additional tests, and referred

---

[2] Plaintiff does not allege the existence of material medical records that were not obtained.  *C.f. Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) (reversing where the ALJ failed to obtain and consider certain material medical records).

her to a neurologist. At her initial appointment with the neurologist, in September 2019, a very subtle footdrop was noted (Tr. 396).³ Otherwise, motor, coordination, and gait were all marked as normal. Subsequent MRIs were consistent with a diagnosis of multiple sclerosis, and she was prescribed Tecfidera (Tr. 391-392). When seen for follow-up appointments in April 2020 and July 2020, Plaintiff reported overall largely unchanged symptoms and having discontinued the Tecfidera due to side effects. The only other appointment recorded before the date last insured was one with her regular doctor in December 2020, at which numbness and balance problems were noted, but "her physical examination was grossly normal" (Tr. 23).

The medical record also includes an appointment with the neurologist in 2022, after the date last insured, in which the doctor notes Plaintiff "has not been seen since 2020, and has not been on any disease modifying therapy" (Tr. 382). She had stopped taking the prescribed Tecfidera at some point before her April 2020 appointment, was unable to get Aubagio instead, did not follow up about an alternative medication, and "as a result she has not been on anything" at the time of her 2022 appointment (Tr. 382). Gabapentin had been prescribed, but it did not appear on the list of medications that she was taking at the time of her appointment.

Consistent with the foregoing, the ALJ summarized the evidence as follows:

> The claimant primarily reported numbness and tingling on the right-side of her body, in particular the right leg, with minimal foot drop noted on examination. Electrodiagnostic studies and imaging were consistent with a

---

³ Plaintiff argues that the RFC fails to adequately account for the neurologist's recommended fall precautions that suggest a much greater degree of limitation (Doc. 10 at 5). The treating neurologist included this bullet point in the records for all but one of Plaintiff's appointments: "Fall precautions were discussed, including the need to take extra time when rising from a seated or laying position, care with dark areas and uneven terrain, and the appropriate need of a call device" (Tr. 383, 386, 389, 396-97). Because this language was included in records from Plaintiff's initial appointment, prior to diagnosis of multiple sclerosis, and because the wording is identical in each instance, it appears likely to be boilerplate cautionary language. Moreover, the treating neurologist may have noted Plaintiff's reported alcohol use of 21 cans of beer per week in issuing this precaution.

9

>    diagnosis of multiple sclerosis and the claimant was prescribed Tecfidera for the
>    control of that condition.  She stopped taking that medication due to side
>    effects.  Gabapentin was subsequently prescribed for the claimant's numbness and
>    tingling, but the claimant did not start a course of any other medication to control
>    the underlying multiple sclerosis.  Physical examinations in the period prior to the
>    date last insured were grossly normal.

(Tr. 24).  Based on this scant evidence of active disability during the relevant period, the ALJ nonetheless assessed an RFC of light work with additional limitations regarding climbing ladders, ropes, or scaffolds; climbing ramps and stairs; balancing on narrow, slippery, or erratically moving surfaces; tasks requiring operation of foot controls bilaterally; handling and fingering; and working at unprotected heights or around moving mechanical parts or other such hazards (Tr. 21).  The RFC is supported by substantial evidence.  *See Lerchaichanakul v. Kijakazi*, No. 4:22-CV-1002 SRW, 2023 WL 5128207, at *6 (E.D. Mo. Aug. 10, 2023) (affirming where "the ALJ accorded Plaintiff the benefit of the doubt by finding that the record showed she suffered from a disability with limitations despite [the State agency consultant's] insufficiency conclusion"); *see also Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.") (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)).

## V.  CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

10

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 25th day of March, 2025.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE